# Vinson&Elkins

John C. Wander  jwander@velaw.com
**Tel** +1.214.220.7878  **Fax** +1.214.999.7878

February 2, 2017

***Via Electronic Filing***
Honorable David C. Godbey
United States District Court
Northern District of Texas – Dallas Division
Earle Cabell Federal Building
1100 Commerce Street, Room 1504
Dallas, Texas 75242-1003

Re:   *The Official Stanford Investors Committee v. Bank of Antigua, et al.*, Civil Action No. 3:13-cv-00762-N, United States District Court for the Northern District of Texas Dallas Division

Dear Judge Godbey:

The Eastern Caribbean Central Bank (the "***Central Bank***") writes this letter to supplement its Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction and Personal Jurisdiction, filed November 13, 2015 ("***Motion to Dismiss***") [Dkts. 40-43]. The U.S. Court of Appeals for the Fifth Circuit issued an opinion on November 22, 2016 in *Frank v. Commonwealth of Antigua & Barbuda*, 842 F.3d 362 (5th Cir. 2016), that invalidates arguments asserted by the Official Stanford Investors Committee (the "***Committee***") in response to the Central Bank's Motion to Dismiss. In addition to any arguments already asserted, the Court should grant the Central Bank's Motion to Dismiss based on legal principles clarified in *Frank* as set forth below.

## Summary of the Issue

The Fifth Circuit's opinion in *Frank* expressly resolves an issue in dispute in this lawsuit:

> Whether the Central Bank's alleged termination of the Antiguan government's obligation to repay loans made by the Bank or Antigua and other entities owned by Allen Stanford is sufficient to satisfy the "commercial activity" exception to the general rule that foreign states are immune from suit in the United States.

Under *Frank*, the Court should answer this question in the negative because the "direct effect" requirement necessary to establish the "commercial activity" exception cannot be satisfied. First, pursuant to Fifth Circuit's opinion in *Frank*, the criminal acts of Allen Stanford ("***Stanford***") interrupted the causal link between any allegedly improper actions taken by the Central Bank and the effect of such actions on investors located in the United States. Second, any financial harm resulting from the Central Bank's actions in terminating the Antiguan government's loan obligations were not *directly felt* by the Committee, but rather by the lender of the loans at issue. Accordingly, this Court's exercise of jurisdiction over the Central Bank under the commercial activity exception is improper as a matter of law.

### The *Frank* Opinion

The Fifth Circuit's opinion in *Frank* involves two separate lawsuits,[1] also pending in this Court, filed against the Commonwealth of Antigua and Barbuda ("***Antigua***") stemming from its alleged involvement with a Ponzi scheme orchestrated by Stanford. The primary allegation in both of the underlying lawsuits is that Stanford and Antigua allegedly engaged in a quid pro quo relationship: Antigua participated in Stanford's Ponzi scheme by providing legitimacy to Stanford's fraudulent enterprise and, in response, Stanford provided Antigua with financial incentives, including loans to Antigua that were never repaid. The cases were consolidated on appeal to address whether the district court had jurisdiction over Antigua under the FSIA.

The plaintiffs in *Frank* argued, in part, that jurisdiction was proper under the FSIA pursuant to the "commercial activity" exception.[2] The plaintiffs asserted the "commercial activity" exception applied because two financial losses had a "direct effect" on investors in the United States: (i) Stanford's Ponzi scheme itself and (ii) Antigua's failure to repay the loans it received from Stanford. The Fifth Circuit disagreed.

---

[1] The two cases are (1) No. 3:09-cv-02165-N-BQ, *Frank et al. v. Commonwealth of Antigua & Barbuda* and (2) No. 3:13-cv-00760-N-BQ, *Official Stanford Investors Committee v. Antigua & Barbuda*. Plaintiffs in the first suit are the individual customers of Stanford International Bank, Ltd., and the Plaintiff in the second suit is the Committee. Both cases were filed over Antigua's alleged involvement with the Stanford Ponzi scheme and were consolidated on appeal solely to address whether the district court had jurisdiction over Antigua under the FSIA.

[2] The investors in *Frank* also argued jurisdiction was proper under the "waiver" exception to the FSIA's general rule. Because the "waiver" exception is not at issue in this lawsuit, it is not discussed herein.

*First*, in regard to the argument that Antigua's actions had a "direct effect" on American investors involved in Stanford's Ponzi scheme, the court held that "a financial loss incurred in the United States by an American plaintiff" can *only* constitute a direct effect sufficient to support jurisdiction under the "commercial activity" exception if the financial loss "is an *immediate consequence* of the defendant's activity." *Frank,* 842 F.3d at 369 (emphasis added) (citing *Voest–Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 897 (5th Cir. 1998)). The plaintiffs in *Frank* could not satisfy this threshold—even if Antigua helped facilitate Stanford's sale of fraudulent investments—because "Stanford's criminal activity served as an intervening act interrupting the causal chain between Antigua's actions and any effect on investors." *Id.* at 370. As a result, the financial losses resulting from Stanford's Ponzi scheme were insufficient to support jurisdiction under the FSIA.

*Second*, the court held the plaintiffs' alternative argument—that jurisdiction was proper pursuant to the "commercial activity" exception because Antigua's failure to repay the loans it received from Stanford-controlled entities resulted in financial losses in the United States—similarly failed. *See id.* The court recognized a "direct effect" *may* exist "when a contract with a foreign nation [i]s to be performed and payment [i]s to be made in the United States." *Id.* at 369 (citing *UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 218–19 (5th Cir. 2009)). But the court emphasized that, in such cases, the relationship between the plaintiff and the defendant's actions cannot be "too indirect." *Id.* at 370. The court held that even though at least some of the loans at issue may have required repayment in the United States, the "direct effect" requirement was not met because "[t]he financial loss due to Antigua's failure to repay the loans was most directly felt by Stanford who was the actual lender in the loan transactions"—not the investor plaintiffs. *Id.* As a result, the effect of Antigua's actions on the investors was "too indirect" to satisfy the "commercial activity" exception.

### Application to the Committee's Arguments Asserted against the Central Bank

The Committee argues the "commercial activity" exception is satisfied because "[i]t is well-settled that a foreign sovereign's failure to pay on a loan or bond payable in the U.S. is a 'commercial activity' with a 'direct effect' in the United States." Pl.'s Resp. Br. [Dkt. 47] at 14. But the Committee's argument suffers from a fatal flaw: it is premised solely on the two opinions that were overturned by the Fifth Circuit in *Frank*. *Compare id.* at 15, *with Frank*, 842 F.3d at 370. The *Frank* court expressly held the Committee's theory "that Antigua's failure to repay Stanford's loans resulted in financial loss in the United States" was insufficient to satisfy the "direct effect" requirement of the FSIA. *Frank*, 842 F.3d at 370. The argument the Committee made with respect to Antigua is the same argument it makes

with respect to the Central Bank, and thus fails as a matter of law.  *See* Pl.'s Resp. Br. at 15 (asserting the Central Bank's actions were "part and parcel" of the alleged Antigua–Stanford scheme and "should be no different under the FSIA as a matter of law").

Under *Frank*, the relationship between the Committee and the Central Bank is "too indirect to satisfy the 'direct effect' requirement."  *Frank*, 842 F.3d at 370.  The Fifth Circuit held that jurisdiction is improper under the FSIA when the financial loss in the United States is directly felt by a third party—not the plaintiff.  *See id*.  Here, as the Fifth Circuit held, the financial loss was not directly felt by the Committee, but rather by Stanford as the lender on the loans in dispute.  *See id*.  Further, the financial loss suffered by the Committee was not "an immediate consequence" of actions taken by Antigua (nor alleged to have been taken by the Central Bank), but rather by Stanford's criminal activity.  *See id.* at 369.  As a result, the Committee cannot rely on the loan activity between Antigua and Stanford as means to assert the Central Bank engaged in a commercial activity with a direct effect in the United States.

For these reasons, as well as those asserted in the Central Bank's Motion to Dismiss, jurisdiction over the Central Bank under the "commercial activity" exception to the FSIA's general rule that foreign agencies and instrumentalities are immune from the jurisdictional reach of U.S. courts is improper.  The Central Bank respectfully requests the Court consider the arguments contained herein—along with law set forth by the Fifth Circuit in *Frank*—in ruling on the Central Bank's Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction and Personal Jurisdiction.

Sincerely,

*/s/ John C. Wander*

John C. Wander

## CERTIFICATE OF SERVICE

On February 2, 2017, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ John C. Wander*
John C. Wander