# BUTZEL LONG
## ATTORNEYS AND COUNSELORS

*a professional corporation*

**Peter D. Morgenstern**
212 374 5379
morgenstern@butzel.com

Suite 1230   477 Madison Avenue
New York, New York  10022
**T:** 212 818 1110  **F:** 212 818 0494
**butzel.com**

February 9, 2017

*Via Electronic Filing*

Honorable David C. Godbey
United States District Court
Northern District of Texas – Dallas Division
Earle Cabell Federal Building
1100 Commerce Street, Room 1504
Dallas, Texas 75242-1003

      Re:    *The Official Stanford Investors Committee v. Bank of Antigua, et al.*,
              Civil Action No. 3:13-cv-00762-N, United States District Court for the
              Northern District of Texas, Dallas Division

Dear Judge Godbey:

      The Official Stanford Investors Committee ("OSIC") respectfully submits this letter in response to the letter filed by the Eastern Caribbean Central Bank ("ECCB") on February 2, 2017, [Doc. 62] informing the Court of the opinion entered by the United States Court of Appeals for the Fifth Circuit in *Frank v. Commonwealth of Antigua & Barbuda*, 842 F.3d 362 (5th Cir. 2016). As demonstrated below, and contrary to the ECCB's claims, the Fifth Circuit's decision in *Frank* requires denial of the ECCB's pending motion to dismiss this case.

      OSIC filed this action as an assignee of the Stanford Receiver in an effort to recover Receivership assets wrongfully taken by the ECCB. In 2009, the ECCB seized control and disposed of the assets of the Bank of Antigua ("BoA") – a Stanford entity subject to this Court's Receivership – without providing the Receivership estate with compensation. The ECCB, acting in concert with the government of Antigua and Barbuda ("Antigua"), seized and disposed of BoA's assets in order to extinguish Antigua's undisputed obligations arising out of prior loans made by BoA to Antigua. In doing so, the ECCB violated international law and deprived the Stanford Receivership of significant assets that should have been used to reimburse Stanford's victims for their multi-billion dollar losses in the Stanford Ponzi scheme. OSIC has asserted claims against the ECCB for avoidance and recovery under the Texas Uniform Fraudulent

Transfer Act ("TUFTA"), conversion, unjust enrichment, and for an accounting. *See* Complaint [Doc. 1] ¶¶ 52-75.

The ECCB filed a motion to dismiss the action based on the Foreign Sovereign Immunities Act ("FSIA"). *See* [Doc. 16]. In response, OSIC demonstrated, *inter alia*, that the FSIA's "commercial activity" exception applies. Under the "commercial activity" exception, a foreign sovereign is not immune from suit in any case based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605 (a)(2). OSIC demonstrated that the ECCB's seizure of BoA was commercial (not regulatory) in nature – given its close nexus to significant loan activity with various Stanford entities – and that its effect on the U.S. Receivership was sufficiently direct for purposes of the FSIA's statutory exceptions. *See* [Doc. 47] pp. 13-18.

Now, in *Frank*, the Fifth Circuit has affirmed its prior authority that the "direct effect" element of the commercial activity exception to the FSIA can be met in a transaction involving an "indirect" relationship. As stated by the Fifth Circuit in *Frank*:

> This Court has previously held that the "direct effect" element was met in a transaction involving an "indirect" relationship. In [*Byrd v. Corporacion Forestal y Industrial de Olancho S.A.*], the indirect relationship at issue was between an assignee to a lease and one of the original parties to the contract. *Id.* at 390–91. As this Court noted in *Byrd*, an assignee to a lease stands in the place of the original party to the contract. *Id.* at 391.

*Frank* at 10 n.9 (citing *Byrd v. Corporacion Forestal y Industrial de Olancho S.A.*, 182 F.3d 380, 391 (5th Cir. 1999), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010)).

Here, consistent with the Fifth Circuit's analysis of the "direct effect" requirement in *Frank* and *Byrd*, OSIC has demonstrated a direct effect in the United States because OSIC is an assignee of the U.S.-based Receiver and stands in the Receiver's shoes. As the Court is aware, on August 10, 2010, the Court approved the formation of OSIC and designated OSIC to take legal actions for the benefit of Stanford investors and on behalf of the Receiver and the Receivership Estate. *See SEC v. Stanford Int'l Bank, Ltd., et al.*, Civil Action No. 3-09-CV-0298-N [Doc. 1149]. OSIC and the Receiver subsequently entered into an agreement regarding the prosecution of claims against third-parties, including claims under TUFTA, which agreement was approved by Order of this Court dated February 15, 2011. *See id.*, [Doc. No. 1267]. Pursuant to these Orders, the Receiver assigned his TUFTA and other claims against the ECCB in this action to OSIC, and OSIC filed this action as the Receiver's assignee on

BUTZEL LONG

February 15, 2013.  *See* Complaint [Doc. 1] ¶ 13.

 Accordingly, OSIC, as the Receiver's assignee, has properly pleaded and demonstrated the commercial activity exception to the FSIA.  The commercial loss alleged in the Complaint was "directly felt by [OSIC]" in the U.S. because OSIC is the Receiver's assignee and the Receiver himself stands in the shoes of Stanford and his entities.  *Frank, supra*.  Although the Fifth Circuit in *Frank* dismissed OSIC's related TUFTA claims arising out of loans made by certain Stanford entities to Antigua, the panel in *Frank* did not appear to consider OSIC's status and standing as the *Receiver's* assignee.  Instead, the panel focused only on OSIC's status as a representative of Stanford investors.  *Cf. Frank* at 11 ("the financial loss in this case was not directly felt by Plaintiffs, who are investors and customers of Stanford and the SIBL. The financial loss due to Antigua's failure to repay the loans was most directly felt by Stanford who was the actual lender in the loan transactions.").  However, as noted above, OSIC is prosecuting this action on behalf of the U.S. Receivership, not individual Stanford investors.  Consequently, there can be no question that OSIC has satisfied the "direct effect" element of the commercial activity exception.  *See also F.D.I.C. v. Bledsoe*, 989 F.2d 805, 810 (5th Cir. 1993) ("An assignee stands in the shoes of his assignor.").

 Finally, the panel in *Frank* dismissed the claims against Antigua in part because it determined that although, "Antigua may have helped facilitate Stanford's sale of the fraudulent CDs, Stanford's criminal activity served as an intervening act interrupting the causal chain between Antigua's actions and any effect on investors."  *Frank* at 10.  Here, however, there is no allegation of an intervening criminal act by Stanford.  The ECCB's theft of Receivership assets was unrelated to Stanford's prior sale of fraudulent CDs to investors and occurred *after* this Court's appointment of the Receiver.  Accordingly, the ECCB's efforts to find support for its position in *Frank* should be rejected, and the ECCB's motion to dismiss the Complaint should be denied in its entirety.

       Respectfully submitted,

       /s/ *Peter D. Morgenstern*

       Peter D. Morgenstern

BUTZEL LONG