IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE OFFICIAL STANFORD INVESTORS COMMITTEE, § § § § Plaintiff, § § v. § § BANK OF ANTIGUA, *et al.*, § § Defendants. § § § § § § § § | | Civil Action No. 3:13-CV-0762-N |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendants Antigua and Barbuda ("Antigua") and Eastern Caribbean Central Bank's (the "ECCB" and, collectively, "Defendants") motions to dismiss [18, 40]. For the reasons set forth below, the Court grants the motions.

### I. THE ORIGINS OF THE DISPUTE

This action arises out of the several-year Ponzi scheme perpetrated by Robert Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The facts associated with Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and are not recounted in great depth here. At root, the scheme was based on Stanford's sale of fraudulent certificates of deposit ("CDs") through Stanford International Bank Limited ("SIBL"), an offshore bank. While Stanford represented to investors that the CD proceeds were invested

only in low-risk, stable funds, in reality the proceeds were funneled into speculative real estate investments and used to support Stanford's lavish lifestyle.

Plaintiff the Official Stanford Investors Committee ("OSIC"), a body tasked with representing Stanford investors, filed the instant case against Antigua, the Eastern Carribean country where SIBL was located, and the ECCB, the monetary authority of Antigua and several other nearby countries. OSIC alleges that Defendants fraudulently misappropriated assets rightfully belonging to Stanford's victims and creditors. In particular, OSIC points to the ECCB's seizure of the Bank of Antigua (the "BOA"), an Antiguan bank owned by Stanford, after the Securities and Exchange Commission commenced civil enforcement proceedings against Stanford. OSIC alleges that, in seizing the BOA, Defendants wrongfully gained possession and control of assets that Stanford fraudulently transferred to the BOA. Through this lawsuit, OSIC seeks to recover those assets, believed to be in the tens or hundreds of millions of dollars, for inclusion in the Receivership Estate and eventual distribution to Stanford's victims and creditors.

Originally, OSIC filed this case against not only Defendants, but also several other related banks. Since then, OSIC has voluntarily dismissed its claims against the other banks. Thus, at present, the following claims remain only against Defendants: avoidance of fraudulent transfers to the BOA, avoidance of fraudulent transfer by seizure of the BOA, conversion, unjust enrichment, an accounting from the BOA, and an accounting from the ECCB as to the value of the BOA. Now before the Court are Defendants' motions to dismiss on the grounds that the Court (1) lacks subject matter jurisdiction over OSIC's claims

pursuant to the Foreign Sovereign Immunities Act (the "FSIA"), 28 U.S.C. §§ 1602–1611; (2) lacks personal jurisdiction over Defendants as they do not have minimum contacts with this forum; and (3) may not examine the validity of Defendants' actions given the act of state doctrine. Because the Court agrees that Defendants are immune under the FSIA, it grants Defendants' motions.[1]

## II. THE FOREIGN SOVEREIGN IMMUNITIES ACT

A suit is properly dismissed when a court lacks subject matter jurisdiction over the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The FSIA "provides the sole source of subject matter jurisdiction in suits against a foreign state." *Dale v. Colagiovanni*, 443 F.3d 425, 427–28 (5th Cir. 2006); *see also* 28 U.S.C. § 1604. "The general rule under the FSIA is that foreign states are immune from the jurisdiction of the United States Courts." *Dale*, 443 F.3d at 428 (quoting *Byrd v. Corporacion Forestal y Industrial de Olancho SA*, 182 F.3d 380, 388 (5th Cir. 1999), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010)).

"However, a district court can exercise subject matter jurisdiction over a foreign state if one of the statute's exceptions apply." *Id.* at 428 (quoting *Byrd*, 182 F.3d at 388). A foreign state "need only present a prima facie case that it is a foreign state; and, if it does, the burden shifts to the party opposing immunity to present evidence that one of the exceptions to immunity applies." *Kelly v. Syria Shell Petroleum Dev. BV*, 213 F.3d 841, 847 (5th Cir.

---

[1] As a result, the Court need not – and does not – address Defendants' alternative grounds for dismissal.

2000). Once the party seeking the exception has "assert[ed] at least some facts that would establish the exception," "the party seeking immunity bears the ultimate burden of proving the nonapplicability of the exception[ ] raised by its opponent." *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, SC*, 923 F.2d 380, 390 n.14 (5th Cir. 1991).

### III. THE COURT GRANTS DEFENDANTS' MOTIONS TO DISMISS

Here, the parties agree that Defendants qualify as foreign states under the FSIA. This case thus hinges on whether any exception to the FSIA applies. OSIC proffers two such exceptions – the commercial activity exception and the expropriation exception – each of which the Court addresses in turn.

#### A. The Commercial Activity Exception Does Not Apply

The commercial activity exception to the FSIA contains three clauses, each of which describes different circumstances in which the exception applies. *See* 28 U.S.C. § 1605(a)(2). OSIC here points to the third clause of the exception, which provides that a foreign state is not immune from suit in the United States when "the action is based . . . upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." *Id.* "The first two elements ensure that 'there must be a connection between the plaintiff's cause of action and the commercial acts of the foreign sovereign.'" *Aldy ex rel. Aldy v. Valmet Paper Mach.*, 74 F.3d 72, 75 (5th Cir. 1996) (emphasis omitted) (quoting *Stena Rederi*, 923 F.2d at 386). The third element ensures there is a jurisdictional nexus with the United States.

*Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533 (5th Cir. 1992). The Court's analysis here focuses on this direct effect requirement.

The direct effect requirement involves a determination of whether the acts the suit is "based upon" had "a direct effect in the United States." 28 U.S.C. § 1605(a)(2). "[A]n effect is 'direct' if it follows 'as an immediate consequence of the defendant's . . . activity,'" *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) (quoting *Weltover, Inc. v. Republic of Arg.*, 941 F.2d 145, 152 (2d Cir. 1991)), and "is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption," *Princz v. Fed. Republic of Ger.*, 26 F.3d 1166, 1172 (D.C. Cir. 1994) (quoting *Upton v. Empire of Iran*, 459 F.Supp. 264, 266 (D.D.C. 1978)). There is no requirement that the effect be "'substantial' or 'foreseeable,'" but it cannot be "purely trivial." *Id.* (quoting *Weltover*, 504 U.S. at 618).

In determining whether an act had a direct effect in the United States, "[t]he question is, was the effect sufficiently 'direct' and sufficiently 'in the United States' that Congress would have wanted an American court to hear the case?" *Callejo v. Bancomer, SA*, 764 F.2d 1101, 1111 (5th Cir. 1985) (quoting *Tex. Trading & Milling Corp. v. Fed. Republic of Nigeria*, 647 F.2d 300, 313 (2d Cir. 1981)).

Although place of payment is not a decisive factor on its own, *id.* at 1112, the Fifth Circuit has previously held "that a financial loss incurred in the United States by an American plaintiff, if it is an immediate consequence of the defendant's activity, constitutes a direct effect sufficient to support jurisdiction under the third clause of the commercial activity exception to the FSIA," *Voest–Alpine Trading USA Corp. v. Bank of China*, 142

F.3d 887, 897 (5th Cir. 1998). In *Voest–Alpine*, the Bank of China refused to pay on a letter of credit owed to the plaintiff, and the plaintiff sued for breach. *Id.* at 890–91. The Fifth Circuit held that the plaintiff, an American company, "suffered a nontrivial financial loss in the United States in the form of funds not remitted to its account at a Texas bank" and that failure to be paid was an "'immediate consequence' of the Bank of China's actions." *Id.* at 896. Therefore, the direct effect requirement was met. *Id.* at 897.

A direct effect may also exist when a contract with a foreign nation was to be performed and payment was to be made in the United States. *See UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 218–19 (5th Cir. 2009). In *Weltover*, the Supreme Court held that Argentina's rescheduling of bond maturity dates had a direct effect in the United States. 504 U.S. at 618–19. Explaining its determination, the Supreme Court noted that "[b]ecause New York was thus the place of performance for Argentina's ultimate contractual obligations, the rescheduling of those obligations necessarily had a 'direct effect' in the United States." *Id.* at 619.

Here, OSIC argues that Defendants' failure to pay on a loan payable in the United States is a commercial activity with a direct effect in the United States. But, analyzing virtually similar allegations against Antigua concerning the same loan activity in another Stanford case, the Fifth Circuit ruled otherwise:

> Plaintiffs' second theory – that Antigua's failure to repay Stanford's loans resulted in financial loss in the United States – similarly fails. Plaintiffs have offered some evidence indicating that at least two of the loans identified in the complaint may require payment in the United States. Additionally, at least one of the loan agreements indicates that the lender, Stanford, was located in the United States. But, the relationship between Antigua and Plaintiffs is too

indirect to satisfy the direct effect requirement. Unlike *Voest–Alpine* and *Weltover*, the financial loss in this case was not directly felt by Plaintiffs, who are investors and customers of Stanford and the SIBL. The financial loss due to Antigua's failure to repay the loans was most directly felt by Stanford who was the actual lender in the loan transactions.

*Frank v. Commonwealth of Antigua & Barbuda*, 842 F.3d 362, 370 (5th Cir. 2016). For the same reasons, the Court here rules that Defendants' actions did not cause a direct effect in the United States. The commercial activity exception thus does not apply.

### B. The Expropriation Exception Does Not Apply

The expropriation exception to the FSIA provides as follows:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –

. . .

>(3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States . . . .

28 U.S.C. § 1605(a)(3). Therefore, to allow a lawsuit to proceed under the expropriation exception, a plaintiff must demonstrate that (1) rights in property are in issue, (2) the property was taken in violation of international law, and (3) one of the two nexus requirements is satisfied. *See Amorrortu v. Republic of Peru*, 570 F. Supp. 2d 916, 924 (S.D. Tex. 2008), *aff'd*, 325 F. App'x 400 (5th Cir. 2009). At the least, OSIC here falters on the second element of the expropriation exception.

OSIC has not sufficiently demonstrated that the property at issue was taken in violation of international law. OSIC alleges that Defendants seized BOA in violation of international law because the seizure was illegitimate and Defendants did not pay just compensation to the Receivership Estate. But OSIC never points to any particular international law Defendants violated. That, on its own, is fatal to OSIC's reliance on this exception. *See Kelly*, 213 F.3d at 847 (noting that, after a party asserting immunity presents a prima facia case that it is a foreign state, "the burden shifts to the party opposing immunity to present evidence that one of the exceptions to immunity applies").

In any event, because a court must "reach a decision about immunity as near to the outset of the case as is reasonably possible," *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1317 (2017) (citing *Verlinden BV v. Central Bank of Nigeria*, 461 U.S. 480, 493–94 (1983)), the Court rules that OSIC's argument that property was taken in violation of international law is still insufficient to confer jurisdiction. While Defendants state that their seizure of the BOA was merely a regulatory activity, OSIC alleges that this claim is pretextual by pointing to a vague statement made by Antigua's Prime Minister that Antigua's intervention was a negotiating tactic meant to keep the Receiver at bay. But Defendants assert that the Prime Minister's statement was not in regards to the seizure of the BOA, but instead to real property interests owned by Stanford. The Supreme Court recently held in *Helmerich & Payne International Drilling* that, where jurisdictional questions turn on factual disputes, the trial judge may resolve them. *Id.* at 1316. Unmoved by OSIC's out-of-context evidence, the Court thus determines that

Defendants' seizure of the BOA was a routine, regulatory activity by a government. As a result, OSIC's proffered expropriation exception is unavailing.

## Conclusion

Because Defendants are immune under the FSIA, the Court grants Defendants' motions to dismiss in full. By separate document of this same date, the Court issues final judgment for Defendants.

Signed August 17, 2018.

_____
David C. Godbey
United States District Judge